[Civ. No. 2368.   Third Appellate District.—November 26, 1921.]

## J. F. LEE et al., Respondents, v. UNITED STATES FIRE INSURANCE COMPANY et al., Appellants.

[1] FIRE INSURANCE—CONVEYANCE OF INSURED PREMISES—DEED IN-TENDED AS MORTGAGE—SOLE OWNERSHIP CLAUSE NOT VIOLATED.—A provision in a fire insurance policy that the policy shall be void if the interest of the insured be other than sole and unconditional ownership is not violated by a conveyance of the insured property in the form of a deed intended as a mortgage, since such instrument transferred no interest in the property but created a lien only which was an incident of the secured debt.

[2] DEED—MORTGAGE—EVIDENCE.—Clear and convincing evidence is required to show that a deed is a mortgage, but where there is a substantial conflict, it is primarily for the trial court to determine whether the evidence is of such character.

[3] FIRE INSURANCE—PROOF OF LOSS—DENIAL OF LIABILITY—WAIVER. A provision of a fire insurance policy requiring the making proof of loss is waived by a denial of liability by the insured prior to the time provided for the making of such proof.

[4] ID.—WAIVER BY INSURANCE ADJUSTER—AUTHORITY—POLICY.—An adjuster of a fire insurance company is not deprived of authority to waive the making of a proof of loss by a provision of the policy to the effect that no representative of the company shall have power to waive any provision or condition of the policy.

---

1. Mortgage of property as change in interest within insurance policy, note, Ann. Cas. 1912B, 525.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

Miller, Thornton & Miller and Miller, Thornton, Miller & Watt for Appellants.

Lamberson & Lamberson for Respondents.

FINCH, P. J.—Judgment was rendered requiring the defendant United States Fire Insurance Company to convey certain real property to plaintiff C. W. Carey upon payment by the latter of the indebtedness found to be due the company from Carey.

The company issued its policy to Carey insuring the dwelling-house on the property against loss by fire in the sum of $2,000. At that time the property was encumbered by a trust deed securing the payment to Charlotte E. Miot of an indebtedness due her from Carey of $2,500. The policy made the loss, if any, payable to Mrs. Miot as her interest might appear and provided that, as to her, the insurance should not be invalidated by any act or neglect of Carey. After the issuance of the policy Carey and his wife deeded the property to plaintiff J. F. Lee. Thereafter the dwelling-house was totally destroyed by fire. Mrs. Miot made proof of loss and the company paid her the full amount of the insurance and took an assignment from her of the trust deed and the indebtedness secured thereby to the extent of $2,000, and later paid her the remainder due her from Carey and took an assignment of the whole indebtedness. The company then demanded of Carey the payment of the whole indebtedness which the trust deed was given to secure and, on his failure to make payment thereof, caused the trustee to give notice of sale of the property. Thereupon the plaintiffs commenced this action and caused summons to be duly served upon defendants. After such service the trustee sold the property to the company for the sum of $3,220.50, the whole amount of the original indebtedness, with interest, costs, and attorney fees. The court gave judgment requiring the company to convey the property to Carey upon his payment of the amount due

under the trust deed, after crediting him with the $2,000
for which the dwelling-house was insured. The court found
that Carey did not offer to pay the company the amount so
found due prior to suit, but that such an offer would have
been unavailing.

[1] Appellants contend that by the deed from Carey to
Lee "there was a change in the title and interest of the
insured in violation of the provisions of its policy, which
precluded him from making any recovery thereon." The
policy provided that "this entire policy shall be void . . .
if the interest of the insured be other than unconditional
and sole ownership." Respondents meet this contention
with the claim that the deed was given to Lee only as
security for money loaned by him to Carey. Lee testified:
"Mr. Carey was sick a couple of years . . . and he had to
have an operation performed on him, and he had to be sent
to San Francisco to the hospital, and he didn't have any
money, and he deeded this land to me in lieu, as security,
and if I had a show to sell the land, I was to sell it and
pay Mrs. Miot, the mortgagor, and myself, and if there was
any left after that, why I was to give it to his wife," and
that he loaned the money to Carey. The Careys kept pos-
session of the property and had the full use and control
thereof. Carey testified to the same effect as Lee and
further: "I never made any note because I had been in
the habit of getting money from him any time I wanted it;
I never did give him a note for security, and I told him I
would, being they had raised me since I was three years
old, and I guess they figured they didn't need a note";
that he always did business with them "that way, . . . any
time I needed any money, I always went over and got it";
that Mrs. Lee is his aunt. There is no evidence that Carey
expressly promised to repay Lee the money loaned him, but
the law implies such a promise. (*Couts* v. *Winston,* 153
Cal. 688 [96 Pac. 357]; *Todd* v. *Todd,* 164 Cal. 258 [128
Pac. 413].) Neither does the evidence show a direct prom-
ise by Lee to reconvey to Carey, but the law imposes such
obligation upon payment of the indebtedness secured by the
deed. (Civ. Code, sec. 2941.) There is no conflict in the
evidence other than such inferences as may be drawn from
the facts stated and the additional facts that revenue
stamps to the value of $1.50 were attached to the deed, such

stamps not being required on a mortgage, and the statement of Carey, hereinafter considered, that he had deeded the property to Lee. [2] Clear and convincing evidence is required to show that the deed is not what it purports to be, but ''where there is a substantial conflict, it is primarily for the trial court to determine whether the evidence in favor of the claim of mortgage is clear and convincing.'' (*Todd* v. *Todd, supra.*) It cannot be said that the trial court was not justified in concluding that the deed was intended as a mortgage.

Appellants urge that, even if the deed was intended as a mortgage, Carey had parted with all dominion over the property by his authorization to Lee to sell and deliver the net proceeds to Mrs. Carey. Such authorization, however, was not irrevocable and Carey retained the right, on payment of the indebtedness to Lee before a sale by the latter— and no such sale was in fact made or attempted—to a reconveyance of the property.

''The clause of the policy providing that it shall be void if the insured's interest is other than sole and unconditional ownership, . . . is designed to remove from him the temptation to profit by the wilful destruction of property not entirely owned by him. . . . 'It therefore follows that the clause is in most cases held to refer to the character and quality of the title—to the actual and substantial ownership, rather than to the strictly legal title.' . . . An equitable title in the insured is a sufficient compliance with the condition in question.'' (*McCullough* v. *Home Ins. Co.,* 155 Cal. 662 [18 Ann. Cas. 862, 102 Pac. 815]; *Raulet* v. *Northwestern etc. Ins. Co.,* 157 Cal. 213 [107 Pac. 292]; *Ramirez* v. *United Fireman's Ins. Co.,* 46 Cal. App. 451 [189 Pac. 309].) Since the deed to Lee was intended as a mortgage it transferred no interest in the land but created a lien only ''which was an incident of the secured debt.'' (*Anglo-California Bank* v. *Cerf,* 147 Cal. 389 [81 Pac. 1077]; *Chapman* v. *Hicks,* 41 Cal. App. 158 [182 Pac. 336].)

[3] Carey did not make proof of loss and it is urged that by such failure he lost all right of recovery under the policy. The court found that he ''was prevented from making such proof of loss by the special agent of the said Insurance Company who had the adjustment of such loss in his hands and by Fred D. Steele, the local agent'' thereof.

Steele testified that proofs of loss were made out by Mr. Reddling, the adjuster of the company, and as Carey "was going to sign the proofs of loss," Reddling "asked him if he was the sole owner of the property, and he said no, he wasn't, hadn't owned it for something like a year or year and a half." Reddling testified to like effect and that he then said to Carey that he had no further use for him and put the prepared proofs in his pocket. Carey testified: "I started to explain to them just the situation of the case, I am no attorney or anything, and I didn't know just how it should be, and I started to explain the case to them, about it, and he just threw up his hands and said they·didn't owe me or Lee anything in the case. . . . He says, 'I have those proofs here for you to sign.' Then I says, 'Well, now, I better go get my uncle as he is interested in this proposition,' and he says, 'In what way is he interested in it?' . . . And so I started to explain how it was, . . . told him that I had given my uncle a deed to the property. . . . I thought they were interested in it, and in fact I didn't get it, go through with the talk, because when I told him that, he threw up his hands and says, 'Well, . . . we don't owe you or Mr. Lee,' something to that effect, 'any insurance.' " The testimony is sufficient to support the finding that Carey was prevented from making proof of loss by the company's agents.

The statement of Reddling, together with the subsequent acts of the company, was a denial of all liability on other grounds than failure to furnish such proofs. Before the expiration of the sixty days allowed Carey in which to furnish such proof, the company took an assignment from Mrs. Miot, subrogating it to her rights under the trust deed to the extent of $2,000. The instrument recited that the policy of insurance provides that it "shall be void . . . if the interest of the insured be other than unconditional and sole ownership"; that Carey had conveyed the property to Lee, and that the company claimed that, by reason of such conveyance, "as to the said C. W. Carey and/or J. F. Lee no liability therefor exists." The company had no right to subrogation under the policy except upon its "claim that, as to the mortgagor or owner, no liability therefor existed." Its act in taking the assignment of the trust deed was in itself a denial of liability to Carey. At the trial and on

this appeal the company has continued to deny all liability to Carey because of his deed to Lee. The denial of such liability prior to the expiration of the time to make proof of loss is a waiver of the condition of the policy requiring such proof. (*Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 263 [17 Am. St. Rep. 233, 23 Pac. 869]; *Royal Ins. Co.* v. *Martin*, 192 U. S. 149 [48 L. Ed. 385, 24 Sup. Ct. Rep. 247, see, also, Rose's U. S. Notes].)

[4] Appellants contend that under the provisions of the policy to the effect that no representative of the company "shall have power to waive any provision or condition of this policy," the adjuster was without authority to waive proof of loss. The cases are all to the contrary. (*McCullough* v. *Home Ins. Co.*, 155 Cal. 663 [18 Ann. Cas. 862, 102 Pac. 814]; *J. Frank Co.* v. *New Amsterdam C. Co.*, 175 Cal. 293 [165 Pac. 927]; *Ramirez* v. *United Fireman's Ins. Co.*, 46 Cal. App. 451 [189 Pac. 309].)

The court admitted evidence to the effect that after the fire Carey made an agreement to sell the property. The testimony was apparently offered for the purpose of showing acts of ownership by Carey. Whether properly admitted or not, the evidence was of slight importance. The uncontradicted evidence, independent of that to which objection is made, shows that, at all times after the execution of the deed to Lee, Carey had the full possession, use, and control of the property. The evidence in dispute could show no more.

There is no suggestion of bad faith or wrongful conduct on the part of the plaintiffs and the defense interposed is purely technical and wholly without support in natural justice.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.