[Civ. No. 2891.    Second Appellate District, Division Two.—May 12,
1919.]

WILLIAM CHAPMAN, Appellant, v. G. WOODS HICKS
et al., Respondents.

[1] MORTGAGES—DEED IN FORM ABSOLUTE—EVIDENCE—FINDING.—In
this action to quiet title, the evidence was sufficient to sustain the
finding of the court that the instrument in question, though in
form a deed absolute, was in fact a mortgage.

[2] ID.—TEST OF MORTGAGE.—The test of a mortgage is whether the
relation of debtor and creditor continues so that there is a sub-
sisting debt after the conveyance, and where a deed, absolute on
its face, is given to secure a debt, it will be held to be a mort-
gage even though the parties stipulate it shall be an absolute
conveyance.

[3] ID.—INTENTION OF PARTIES—FORM OF INSTRUMENT IMMATERIAL.—
In such a transaction the intention of the parties must govern, and
it matters not what particular form the transaction may take.
If the deed is made for the purpose of securing the payment of
a debt, it is a mortgage no matter how strong the language of
the deed, or any instrument accompanying it, may be.

---

1. Absolute deed as mortgage, notes, 129 Am. St. Rep. 1137; 11
L. R. A. (N. S.) 209.

[4] ID.—CONFLICT OF EVIDENCE—PROVINCE OF TRIAL COURT.—Although the character of a deed absolute in form cannot be changed to that of a mortgage save upon clear and convincing evidence, where there is a substantial conflict, it is primarily for the trial court to determine whether the evidence that the instrument was intended to secure the payment of a subsisting debt is clear and convincing.

[5] ID.—EXECUTION OF DEED ABSOLUTE—PRESUMPTIONS.—The presumption arising from the execution and delivery of a deed absolute in form is that it is made in pursuance of an agreement to sell, and vests an absolute title in the grantee.

[6] ID.—DATE OF DEED IMMATERIAL.—Where a deed is made pursuant to the understanding in accordance with which the loan is made and the promissory note and agreement to reconvey are executed, it is immaterial that it is made at an earlier date and that when it is executed there is as yet no debt.

[7] APPEAL—ALTERNATIVE METHOD—INSUFFICIENT BRIEFS—EXAMINATION OF TRANSCRIPT.—Where an appeal is taken under the alternative method, and the appellant fails to print in his brief, or in a supplement thereto, enough of the evidence to enable the appellate court to pass upon his arguments with reference to the trial court's rulings on the admission of evidence, no duty devolves upon the appellate court to examine the typewritten transcript in search of error.

[8] MORTGAGES—ACKNOWLEDGMENT OF DEEDS BY ATTORNEY IN FACT—NOTICE.—The fact that an acknowledgment of a deed is taken by the attorney in fact of the grantors, as notary public, does not impair the efficacy of its recordation to impart notice to subsequent purchasers.

[9] ID.—PUBLIC POLICY—INTEREST OF NOTARY—QUALIFICATION OF AGENT TO TAKE ACKNOWLEDGMENT.—While public policy forbids the taking of an acknowledgment by a person directly interested, financially or beneficially, in the transaction, one who is not pecuniarily or beneficially interested in the transaction evidenced by the deed or other instrument is not disqualified to take the acknowledgment merely because he is acting as the agent or attorney for the party who is beneficially interested.

[10] ID.—NATURE OF ACT—RIGHT OF AGENT TO TAKE.—The taking of an acknowledgment being deemed to be a ministerial and not a judicial act, it may be taken before an agent even though he have, indirectly, a financial interest in the transaction.

[11] ID.—ACTION BY MORTGAGEE TO QUIET TITLE—JUDGMENT—RIGHT OF PLAINTIFF.—Where, in an action to quiet title, the trial court finds that the deed under which the plaintiff claims title is in

9. Right of interested persons to take acknowledgment of deed, note, 33 L. R. A. 332.

effect a mortgage, it is justified in adjudging that the plaintiff is not the owner of the land, as alleged in the complaint, but it is not justified in adjudging that the defendant, who seeks relief by way of cross-complaint, is the owner in fee simple absolute. The plaintiff has a lien upon the premises.

[12] ID.—EQUITY—STATUTE OF LIMITATIONS.—Where, in such proceeding, equitable relief is sought by cross-bill, the equitable tests usually applied to a bill filed by a complainant are equally applicable to the cross-complainant. The cross-complainant will not be permitted to assert that plaintiff's lien has become extinguished by lapse of time.

[13] ID.—ACTION TO QUIET TITLE—LAPSE OF TIME—RELIEF GRANTED. Notwithstanding that the lien of a mortgage is extinguished by the lapse of time, neither the mortgagor nor his grantees can quiet the title as against the mortgagee.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles Lantz and Howard F. Shepherd for Appellant.

C. Elliott Miller and C. W. Byrer for Respondents.

FINLAYSON, P. J.—This is an action to quiet title. From a judgment in favor of defendants, plaintiff appeals.

On March 7, 1905, defendant Hicks and wife executed to plaintiff an instrument, in form a grant deed, but which the court found to be in effect a mortgage given to plaintiff to secure an indebtedness of $265 borrowed by Hicks and wife from plaintiff and evidenced by a promissory note for that sum executed by the borrowers, as payers, to plaintiff, as payee, bearing date March 8, 1905, and due three months after date. Plaintiff, on March 8, 1905, executed an instrument whereby he agreed to reconvey the property to Hicks for the amount so borrowed, if it were paid on or before the maturity of the promissory note—June 8, 1905. The instrument that the court so found to be a mortgage—upon its face a deed absolute—was recorded March 8, 1905. On March 20, 1905, Hicks and wife conveyed the property by grant deed to defendant Hudson. Hicks made several partial payments on the note of himself and wife, but the evidence shows that a very substantial balance still remains

unpaid. During a period extending from April 29, 1906, to April 24, 1912, several letters were written by Hicks to plaintiff's attorney in fact, Charles Lantz, relative to payment of the note—letters which plaintiff contends interrupted the running of the statute of limitations. It was stipulated at the trial that ever since he purchased the property, defendant Hudson has not been a resident of this state; and there is some evidence, though slight and unsatisfactory, that Hudson was not only a nonresident, but has actually been absent from the state ever since shortly after the deed to him. Defendant Hicks, though served with summons, made no appearance. Hudson, in addition to an answer, filed a cross-complaint wherein he alleged ownership in himself and that the prior deed to plaintiff was, in effect, a mortgage, and prayed for affirmative relief. In its findings the court found not only that the deed to plaintiff was, in effect, a mortgage, but that the note and mortgage given to plaintiff by Hicks et ux, were barred by the statute of limitations, and gave a judgment wherein, denying any relief whatsoever to plaintiff and granting to Hudson affirmative relief in accordance with the prayer of his cross-complaint, it adjudged that Hudson is the owner in fee simple absolute, quieted his title as against any claim of plaintiff or defendant Hicks, and canceled the mortgage.

The appeal is taken under the alternative method. Appellant, however, has not printed in his brief, or in any supplement thereto, any part of the judgment-roll; nor has he printed any part of the evidence, save copies of the letters from Hicks to Lantz and a scrap of evidence given by Hicks and Lantz respecting some of the circumstances attending the execution of the instrument which the court found to be a mortgage, together with a detached modicum of the evidence of certain witnesses designed to illustrate certain objections to the admission of evidence, but which is so fragmentary that it fails to serve the purpose.

[1] There is ample evidence to sustain the finding that the instrument from Hicks and wife to appellant, though in form a deed absolute, was in fact a mortgage. On March 7, 1905, Hicks went to the office of Lantz, the attorney in fact for appellant under a general power of attorney, for the purpose of borrowing $265 from appellant through Lantz. According to Lantz, Hicks asked him if

he could not borrw the money upon a mortgage. To this
Lantz replied that he would not care to handle the matter
upon a mortgage, but that if any arrangements were made
for a loan Hicks could make an absolute deed and at a later
date an agreement to reconvey would be executed. The
deed to appellant, though dated March 7, 1905, was not
acknowledged until March 8th—the date when the promis-
sory note and the agreement to reconvey were executed—
when it was acknowledged before Lantz, as notary public.
Hicks testified: "I asked if I might raise some money on
this property—on one of the lots; Mr. Lantz desired the
two lots as stated, and I suggested giving a mortgage; he
suggested it was just the same to me, the deed with a mort-
gage back. I finally accepted that proposition, needing
money at the time. . . . I got the agreement back." By
the words "a mortgage back," the witness evidently had
reference to the agreement to reconvey—an agreement in
the nature of a defeasance. From this evidence it is mani-
fest that Lantz gave Hicks to understand that, so far as
the latter's interests were concerned, a deed with an agree-
ment to reconvey, in the nature of a defeasance, would be
the same as a mortgage. Though Lantz evidently did not
intend that a mortgage *eo nomine* should be executed, and
was unwilling to accept a lien in that form to secure the
debt owing to his principal, nevertheless the transaction
shows that there was no consideration for a sale and con-
veyance to appellant, but that there was a loan to Hicks
and wife—a continuing, subsisting loan—and that, to secure
this loan, Lantz was willing to and did accept a conveyance
to his principal. **[2]** The test of a mortgage is whether
the relation of debtor and creditor continues so that there
is a subsisting debt after the conveyance (*Husheon* v.
*Husheon,* 71 Cal. 407, [12 Pac. 410]; *Holmes* v. *Warren,*
145 Cal. 457, [78 Pac. 954]); and where a deed, absolute
on its face, is given to secure a debt, it will be held to be
a mortgage even though the parties stipulate it shall be an
absolute conveyance. (*Hodgkins* v. *Wright,* 127 Cal. 688,
[60 Pac. 431]; Civ. Code, secs. 2924, 2925.) **[3]** The in-
tention of the parties must govern, and it matters not what
particular form the transaction may take. If the deed is
made for the purpose of securing the payment of a debt, it
is a mortgage, "no matter how strong the language of the

deed, or any instrument accompanying it, may be."
(*Woods* v. *Jensen,* 130 Cal. 200, [62 Pac. 473].) **[4]** Al-
though, as has often been said, the character of a deed abso-
lute cannot be changed to that of a mortgage save "upon
clear and convincing evidence" (*Sheehan* v. *Sullivan,* 126
Cal. 189, [58 Pac. 543]), the rule is well settled that, where
there is a substantial conflict, it is primarily for the trial
court to determine whether the evidence that the instru-
ment was intended to secure the payment of a subsisting
debt is clear and convincing. (*Couts* v. *Winston,* 153 Cal.
686, [96 Pac. 357].) **[5]** "The presumption arising from
the execution and delivery of a deed absolute in form is,
undoubtedly, that it is made in pursuance of an agreement
to sell, and vests an absolute title in the grantee. . . . At
the same time the court has been watchful against all
schemes of money-lenders to deprive unfortunate debtors of
their lands at less than their value, under the claim that
the transaction was a purchase, and not a loan." (*Locke*
v. *Moulton,* 96 Cal. 22, 29, [30 Pac. 957, 959].)   Here the
evidence that the deed was given as security for the debt is
not only clear and direct, but, in truth, is without substan-
tial contradiction.   There was never any mention of a sale,
or of anything but a loan.   Prior to the execution of any
instrument, Hicks had applied to Lantz for the loan, and
had offered to mortgage his land as security, but at Lantz's
suggestion he executed instead a deed, signed by himself
and wife, and took an instrument, signed by their grantee,
purporting to give him an option to repurchase for the
amount of the loan evidenced by their promissory note, at
any time before the maturity of the debt.

**[6]** In vain is appellant's contention that the deed was
not a mortgage because, on March 7th, when it was exe-
cuted, there was no debt.   The deed was made pursuant to
the understanding in accordance with which the loan was
made and the promissory note and the agreement to recon-
vey were executed.   The very object of the admission of
parol evidence is to show the real nature of the transaction
without regard to the mode or form or sequence in which
the writings are signed and delivered.   "If the defeasance
forms a part of the original transaction, it is not material
that it be executed at the same time as the deed." (*Sears*
v. *Dixon,* 33 Cal. 332.)

Appellant objects to certain rulings upon the admission of evidence. He has not printed in his brief, or in any supplement appended thereto, enough of the evidence to enable us to pass upon the points made in his argument. The requirement of the statute in this regard has been repeatedly pointed out. (*Scott* v. *Hollywood Park Co.*, 176 Cal. 680, [169 Pac. 379], and cases there cited.) **[7]** No duty devolves upon us to examine the voluminous typewritten transcript of the stenographic reporter in search of error.

**[8]** Respondent, Hudson took his title from Hicks with notice of the prior recorded instrument—in form a deed absolute from Hicks and wife to appellant. The fact that the acknowledgment of that instrument by Hicks and wife was taken by Lantz as notary public, even though at that time Lantz held a general power of attorney from the grantee, or, more correctly speaking, the mortgagee, appellant here, does not impair the efficacy of its recordation to impart notice to subsequent purchasers.

**[9]** Because of the probative force accorded to certificates of acknowledgment, as well as the usually important consequences of such instruments, public policy forbids the taking of an acknowledgment by a person directly interested, financially or beneficially, in the transaction (1 C. J. 802; *Lee* v. *Murphy*, 119 Cal. 364, [51 Pac. 549, 955] ; *Murray* v. *Tulare Irr. Co.*, 120 Cal. 311, [49 Pac. 563, 52 Pac. 586]) ; but, according to the weight of authority, one who is not pecuniarily or beneficially interested in the transaction evidenced by the deed or other instrument is not disqualified to take the acknowledgment merely because he is acting as the agent or attorney for the party who is beneficially interested. (1 C. J. 807, sec. 115, and note; *Bank of Woodland* v. *Oberhaus*, 125 Cal. 320, [57 Pac. 1070] ; *First Nat. Bank* v. *Merrill*, 167 Cal. 392, [139 Pac. 1066].) **[10]** And, in fact, where, as in this state, the taking of an acknowledgment is deemed to be a ministerial and not a judicial act, such an acknowledgment may be taken before an agent even though he have, indirectly, a financial interest in the transaction, as where the acknowledgment of a deed to a bank is taken before the cashier who is likewise a stockholder of the grantee corporation. (*First Nat. Bank* v. *Merrill*, *supra*.)

It is not necessary to determine whether the letters from Hicks to Lantz constituted an acknowledgment or promise sufficient to keep alive the original obligation of Hicks and wife to pay the loan; nor whether, notwithstanding Hudson has been absent from the state practically ever since the execution of the deed to him, the lien of appellant's mortgage was extinguished by lapse of time so as to prevent any affirmative relief thereon in his favor as the mortgagee in the instrument so executed to him to secure his loan to Hicks et ux. Since the adoption of the codes a deed absolute in form, but in effect a mortgage, does not pass the legal title, and the grantee, or, more properly, the mortgagee, is vested with a lien only. (*Raynor* v. *Drew,* 72 Cal. 307, [13 Pac. 866]; *Moisant* v. *McPhee,* 92 Cal. 76, 79, [28 Pac. 46]; *Locke* v. *Moulton,* 96 Cal. 21, [30 Pac. 957]; Civ. Code, secs. 2888, 2924.) **[11]** Having found that the deed to appellant was in effect a mortgage, and that, therefore, appellant, as the owner of naught but a mortgage lien, was not entitled to relief in a suit to quiet title as against the owner of the legal title (*Von Drachenfels* v. *Doolittle,* 77 Cal. 295, [19 Pac. 518]; *Fudickar* v. *East Riverside Irr. Dist.,* 109 Cal. 38, [41 Pac. 1024]), the trial court would have been justified in adjudging that appellant is not the owner of the land, as alleged in his complaint. But the judgment is not thus limited. It is not simply an adjudication that appellant does not own the land. Granting to respondent Hudson affirmative relief, as sought in his cross-complaint, and treating him as an actor in the action, seeking equitable relief—as, indeed, he became upon the filing of his cross-complaint—the trial court adjudged Hudson to be the owner in fee simple absolute, that appellant and all persons claiming under him be forever barred from asserting any title to or lien upon the premsies, and that the mortgage be canceled and annulled. "He who seeks equity must do equity." As a condition to affirmative relief upon his cross-complaint, Hudson is as much bound by the equitable principle enunciated in this maxim as he would be were he a plaintiff in an action seeking to quiet his title. **[12]** Where equitable relief is sought by a cross-bill, the equitable tests usually applied to a bill filed by a complainant are equally applicable to the cross-complainant. (21

R. C. L. 502; *Union etc. Bank* v. *Day,* 79 Neb. 845, [113 N. W. 530].)

Though the legal title be in Hudson, and though we·assume, for the purpose of the decision, that the lien of the mortgage to appellant has become extinguished by lapse of time so that appellant could maintain no affirmative action to foreclose his mortgage, nevertheless the land remains equitably burdened with the debt to secure which the mortgage to appellant was given. Hudson received his conveyance from Hicks and wife shortly after the latter had deeded the land to appellant as security for the money they had borrowed. At that time a liability to pay the debt rested upon the property as well as upon the mortgagors. **[13]** No rule is more firmly established in this state than the one to the effect that, notwithstanding the lien of a mortgage is extinguished by lapse of time, the mortgagor cannot, without paying his debt, quiet the title as against the mortgagee. The rule is equally applicable to a grantee of the mortgagor who acquires the property while it is still burdened with a lien for the security of the debt. (*Faxon* v. *All Persons,* 166 Cal. 707, [L. R. A. 1916B, 1209, 137 Pac. 919]; *Bulson* v. *Moffatt,* 173 Cal. 685, [161 Pac. 259].) "When the plaintiff is himself the debtor the applicability of the rule is apparent. No different situation is presented where the plaintiff has bought the land before the right to foreclose the mortgage has become barred. In such case, he acquired the property subject to a valid existing lien, which was, presumably, taken into account in fixing the purchase price. Such property, when he acquired it, was bound by the debt, and it would be as inequitable to relieve him of the burden without payment as it would be to thus free the original debtor." (*Faxon* v. *All Persons,* 166 Cal. 721, [L. R. A. 1916B, 1209, 137 Pac. 925].) Where the lien of the mortgage is extinguished by lapse of time, the mortgagee has nothing that the mortgagor or his grantee can redeem in an action brought in the exercise of the statutory right of "redemption," so called, as recognized by sections 2903–2905 of the Civil Code and 346 of the Code of Civil Procedure. Under such circumstances, an action to "redeem," whether by the mortgagor or his grantee, is, in effect, merely an action to remove a cloud, and, as was said in *Raynor* v. *Drew,* 72 Cal. 307, [13 Pac. 866]: "Since a

court of equity may require justice to be done as a condition of removing the cloud, why should there be any period of limitation for such an action?'' The same principle applies with equal force where the grantee of the mortgagor is seeking such relief by cross-complaint filed by him in an action to quiet title brought against him by the mortgagee. Under such circumstances the cross-complainant is an actor in the action—as much so as the plaintiff himself in the suit to quiet title—and is equally bound to do equity as a condition to the obtaining of equitable relief.'

Had the court specifically found that the loan to Hicks has not been wholly repaid, and had it determined the amount that remains unpaid, this court might have remanded the cause with directions to enter a decree in accordance with the views set forth in this opinion, as was done in *Booth* v. *Hoskins,* 75 Cal. 271, [17 Pac. 225], and *Boyce* v. *Fisk,* 110 Cal. 107, [42 Pac. 473]. For lack of such finding, the case must be remanded for a retrial.

Judgment reversed.

Sloane, J., and Thomas, J., concurred.